UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:   Laurie A. Todd,                                                        Case No. 15-11083
                                                                                Chapter 7
                   Debtor.

APPEARANCES:

Laurie A. Todd, *Pro Se*
*Debtor*
7838 Mimosa Drive
Port Richey, FL 34668

The Dribusch Law Firm                                          Christian H. Dribusch, Esq.
*Attorneys for the Chapter 7 Trustee*
1001 Glaz Street
East Greenbush, NY 12061

Nolan Heller Kauffman LLP                                      Francis J. Brennan, Esq.
*Former Attorneys for Laurie A. Todd*
80 State Street, 11th Floor
Albany, NY 12207

McElroy, Deutsch, Mulvaney & Carpenter, LLP                    Kevin S. Brotspies, Esq.
*Attorneys for Endurance American Insurance Company*
88 Pine Street, 24th Floor
New York, NY 10005

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Currently before the Court is the Chapter 7 Trustee's ("Trustee") objection to Laurie Todd's ("Debtor") exemptions claimed under Florida law pursuant to 11 U.S.C. § 522(b)(3)(A). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), and (b)(2).

## BACKGROUND AND PROCEDURAL HISTORY

The Debtor commenced a chapter 11 case on May 20, 2015 ("Petition Date") by filing a voluntary bankruptcy petition ("Petition"). The Petition indicates the Debtor resided at 341 Miller Road, Hudson, New York 12534 ("Hudson Property") on the Petition Date. In addition to

1

the Hudson Property, Schedule A/B states that Debtor owns a single-family home located at 7838 Mimosa Drive, Port Richey, Florida 34668 ("Mimosa Drive"). Initially, the Debtor claimed New York law exemptions on Schedule C pursuant to 11 U.S.C. § 522(b)(3)(A). Relevant to this matter, the Debtor claimed the Hudson Property exempt as her homestead and claimed an inherited IRA worth roughly $800,000 as wholly exempt pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 5205(c)(1), (2), and/or (5).

Endurance American Insurance Company ("Endurance"), objected to the Debtor's exemption of the inherited IRA. The Debtor submitted an affidavit opposing the objections that states the Hudson Property is her home and principal residence. (Trustee Ex. 2, ECF No. 17.) After multiple failed mediation attempts seeking a global resolution of all issues - of which the inherited IRA exemption was a component - among the Debtor, her creditors, and other parties in interest and several rounds of briefing, the Court entered a Memorandum-Decision and Order on March 23, 2018, finding that the inherited IRA was not exempt under New York law. *In re Todd*, 585 B.R. 297 (Bankr. N.D.N.Y. 2018). The Debtor appealed to the District Court, and while the matter was being briefed before the Honorable Mae A. D'Agostino, the Debtor amended her Schedule C to claim exemptions under Florida law instead of New York law. There is no dispute that inherited IRAs are completely exempt pursuant to Florida law. *See* Fla. Stat. § 222.21.

On August 20, 2018, after an evidentiary hearing on the Court's Order to Show Cause for Contempt, and on oral motion of the United States Trustee, the Court converted the Debtor's case to chapter 7 for cause because the Debtor transferred approximately $632,000 out of the bankruptcy estate from June 4, 2018 to August 7, 2018 without court approval and in direct violation of a restraining order.[1] Of the $632,000 that the Debtor dissipated, the Debtor

---

[1] The Court denied the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(6)(A) based on her violation of the restraining order. (Adv. Pro. 18-90040, ECF No. 17.)

2

withdrew $300,000 from the inherited IRA that was the subject of the pending appeal before District Judge D'Agostino. On January 17, 2019, Judge D'Agostino entered a Memorandum-Decision and Order affirming this Court's decision that the inherited IRA is not exempt under New York law. *Todd v. Endurance Am. Ins. Co.*, 596 B.R. 79 (N.D.N.Y. 2019). On February 11, 2019, the Trustee objected to the Debtor's amended Florida exemptions on the basis that the Debtor could only claim exemptions under New York law or federal law pursuant to Section 522(b)(3)(A). Endurance filed papers supporting the Trustee's objection[2] and the Debtor filed opposition arguing that she was domiciled in Florida sufficiently ahead of her bankruptcy filing to allow her to claim Florida exemptions. On March 19, 2019, the Court held an evidentiary hearing on the issue of domicile at which only the Debtor testified. At the hearing, the parties agreed that the Debtor was domiciled in New York prior to purchasing Mimosa Drive and that the specific issue to be determined by the Court was when, if ever, the Debtor changed her domicile to Florida prior to her bankruptcy case.

The Court issued a post-trial briefing order requiring simultaneous submissions on May 3, 2019, and replies, if any, on or before May 10, 2019. On April 18, 2019, the Debtor filed a letter with the Court which included voluminous communications between herself and her counsel, Mr. Brennan. (ECF No. 412.) On April 24, 2019, Debtor's counsel filed a motion to withdraw as counsel for the Debtor, and, after a hearing on May 1, 2019, the Court granted Mr. Brennan's motion and suspended the briefing schedule. On May 6, 2019, the Court issued an Amended Briefing Order. On May 15, 2019, the Debtor filed a form changing her address to

---

[2] Endurance claims its supporting papers constitute its own objection to exemption. Procedurally, Endurance's submission does not constitute its own objection to exemption. However, as the largest creditor in this case, Endurance has a considerable interest in the Trustee's objection and the Debtor did not object to Endurance's filings or its participation at the evidentiary hearing.

3

Mimosa Drive.[3]  (ECF No. 432.)  The Trustee, Endurance, and the Debtor, *pro se*, filed briefs, and the Court took the matter under advisement on June 14, 2019.

## FINDINGS OF FACT

Based on the evidence in the record and the Debtor's testimony, the Court makes the following findings of fact:

*Early life*

1. The Debtor was born and raised in New York.  (Tr. 83:9-13.)

2. The Debtor went to school in New York.  (Tr. 83:14-15.)

3. The Debtor was married and raised her children in New York.  (Tr. 83:16-17, 22-23.)

4. The Debtor spent her career working in New York.  (Tr. 83:23-84:2.)

*Property*

5. The Debtor jointly owns the Hudson Property with her husband.  (Tr. 104:7-13; Schedule A/B.)

6. The Debtor values the Hudson Property at $359,000.  (Schedule A/B, ECF No. 1.)

7. The Debtor purchased Mimosa Drive in February 2011 and she owns it individually.  (Tr. 2:19-3:6.)

8. The Debtor values Mimosa Drive at $60,000.  (Schedule A/B, ECF No. 1.)

9. Prior to purchasing Mimosa Drive, the Debtor only resided in New York at the Hudson Property.  (Tr. 4:2-4.)

*Family*

10. The Debtor's husband lives in New York.  (Tr. 85:13-15.)

11. The Debtor's eldest child, sisters, brother, nieces, and nephews live in New York.  (Tr. 84:12-14, 85:6-12.)

---

[3] Until then, her address on the public docket in her case was still the Hudson Property, c/o Michael Todd.  (ECF No. 361.)

*Voting, taxes, driver's license, and motor vehicle registration*

12. The Debtor voted in New York in 2012, 2015, 2016, and 2017.  (Tr. 99:2-12.)

13. The Debtor did not register to vote in Florida until December 2017.  (Tr. 99:13-18.)

14. As of the trial on March 19, 2019, the Debtor still had not voted in Florida.  (Tr. 99:21-23.)

15. The Debtor filed tax returns in New York for tax years 2012, 2013, and 2014 with the assistance of an accountant located in New York City.  (Tr. 105:7-19, 106:24-107:2.)

16. The Debtor had a New York driver's license until June 2018 when she acquired a Florida driver's license.  (Tr. 97:11-98:4.)

17. From 2011 and on, the Debtor owned, registered, insured, and operated a car in New York State.  (Tr. 92:20-93:9.)

*Banking and Professional Relationships*

18. Debtor has a bank account in New York with Key Bank.   (Sec. 341 Tr. at 45:24-46:3.)

19. In 2011, the Debtor opened a bank account in Florida with Wells Fargo.  (Tr. 5:15-23.)

20. The Debtor's investment advisor in 2012, 2013, and 2014 was located in New York.  (Tr. 105:20-106:19; Sec. 341 Tr. 70:3-9.)

21. The Debtor had insurance policies in New York and Florida before the Petition Date.  ((Tr. 94:22-25, 21:15-18, 37:24-38:16.)

22. The Debtor has a doctor in New York.  (Tr. 82:11-15.)

23. The Debtor had the following contact with medical professionals in Florida:

    a. Visits to the veterinarian for the Debtor's dogs.  (Tr. 6:21-7:3.)

    b. Medical care in February 2013 for vertigo.  (Tr. 57:9-58:6.)

    c. Several routine visits to the Dentist from 2012 to 2015.  (Tr. 78:11-23.)

    d. Visits to an Oncologist once a year in 2011 and 2012.  (Tr. 81:21-82:8.)

5

*Presence within Florida*

24. The Debtor filed a declaration of domicile in Florida in 2019. (Tr. 79:3-9, Debtor's Trial Ex. 135.)

25. The Debtor spent time living in both New York and Florida since purchasing Mimosa Drive.

## ARGUMENTS

The Trustee and Endurance argue that the Debtor fails to establish a change of domicile from New York to Florida prior to the Petition Date. The Trustee and Endurance assert that the Debtor established, at most, that she had contacts with Florida that are consistent with the contacts she had with New York during the same time period. Further, they claim that the contacts with New York are more significant (family, voting, filing taxes, etc.) and support a finding that it was the Debtor's intent to remain in New York at all times up to the Petition Date. Additionally, Endurance asserts that the Debtor should be denied the ability to amend her exemptions due to the Debtor's bad faith conduct in this case. The Debtor responds that she established her change in domicile through her purchase of Mimosa Drive, her presence in Florida, and maintenance of professional, banking, and insurance relationships. Further, the Debtor claims Endurance's bad faith argument is contrary to the Supreme Court's holding in *Law v. Siegel*.

## DISCUSSION

I.     <u>11 U.S.C. § 522(b)(3)(A)</u>

Pursuant 11 U.S.C. § 522(b)(3)(A),[4] a debtor may exempt property under "State or local law that is applicable on the date of the filing of the petition . . . ." To discourage debtors from

---

[4] Pursuant 11 U.S.C. § 522(b)(3)(A), a debtor may exempt
    any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was

forum shopping for more favorable exemptions and turning non-exempt assets into exempt assets on the eve of bankruptcy, the debtor's domicile before bankruptcy determines the applicable state law. If a debtor is domiciled in one state for two-years immediately preceding the bankruptcy case, the applicable state law is the law of that state. *Id.* However, if the debtor's domicile changed during this two-year period, "then the applicable state law is that of the state in which the debtor was domiciled for the 180 days immediately preceding the [two-year] period, or for the longest portion of that 180-day period." *Shiu Jeng Ku v. Brown (In re Shiu Jeng Ku)*, 2017 Bankr. LEXIS 1751, at *7–8 (9th Cir. B.A.P. Jun. 21, 2017).

II. Objections to Exemptions Based on Domicile

Pursuant to Federal Rule of Bankruptcy Procedure 4003(b), a party in interest may file an objection to a debtor's exemption. The objecting party has the ultimate burden of proving by a preponderance of the evidence that the exemption is not properly claimed. Fed. R. Bankr. P 4003(c). On the narrow issue of change of domicile, however, the Second Circuit has held that the party arguing that the domicile changed has the burden of proof by clear and convincing evidence.[5] *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *see also Shiu Jeng Ku*, 2017 Bankr. LEXIS 1751, at *7–8. This heavy burden comes from the rule that a person maintains a domicile until a change of domicile is established. *Palazzo*, 232 F.3d at 42 ("Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change.").

III. The Debtor's Domicile Did Not Change to Florida

In this case, the Trustee submitted substantial evidence that the Debtor's domicile of origin is New York and that her New York domicile continued until at least the Petition Date. In

---

located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.

[5] The Court is aware that other Circuit Courts of Appeal have ruled that parties seeking to establish a change in domicile may do so by the lesser preponderance of the evidence standard. *See McCann v. George W. Newman Irrevocable Tr.*, 458 F.3d 281, 289 (3d Cir. 2006).

7

response, the Debtor does not dispute that she was domiciled in New York in the past but she argues that her domicile changed to Florida after she acquired Mimosa Drive. (Tr. 86:12-15.) Since no party argues that the Debtor's domicile switched more than once, to prevail, the Debtor must prove by clear and convincing evidence that her domicile changed from New York to Florida prior to the start of the two-year period. If the Debtor changed her domicile to Florida during the two-year period, the Debtor may only claim exemptions under New York or federal law because the Debtor would have been domiciled in New York for the entirety of the 180-day period.

Domicile is not defined by the Bankruptcy Code but courts consistently hold that domicile is to be determined in the same manner as for diversity jurisdiction. *Shiu Jeng Ku*, 2017 Bankr. LEXIS 1751, at *9–10; *In re Felix*, 582 B.R. 915, 922 (6th Cir. B.A.P. 2018). "Domicile is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Palazzo*, 232 F.3d at 42. While a debtor can have multiple residences at the same time, a debtor can only have one domicile. *See id.* Courts have explained that "a person may be absent from their domicile for long periods of time without losing it, so long as a new domicile is not acquired . . . ." *Felix*, 582 B.R. at 922.

To establish a change of domicile, "two things are indispensable: First, residence in a new domicile; and, second, the intention to remain there." *Palazzo*, 232 F.3d at 42 (quotations omitted). With regard to the first element, residency is "the act or fact of living in a given place for some time." *United States v. Venturella*, 391 F.3d120, 125 (2d Cir. 2004); *Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992) ("Residency means an established abode, for personal or business reasons, permanent for a time. A resident is so determined from the physical fact of that person's living in a particular place.").

8

With regard to the intent element, since expressions of intent to remain are self-serving, the domicile change must be supported by the objective manifestations of the Debtor's subjective intent to remain in Florida. *See Shiu Jeng Ku*, 2017 Bankr. LEXIS 1751, at *10. In determining a party's intent, courts consider many factors, including:

> current residence[;] voting registration[;] driver's license and automobile registration[;] location of brokerage and bank accounts[;] membership in fraternal organizations, churches, and other associations[;] places of employment or business[;] . . . payment of taxes[;] . . . whether a person owns or rents h[er] place of residence[;] the nature of the residence (i.e., how permanent the living arrangement appears)[;] . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*New Canaan Capital Mgmt., LLC v. Ozado Partners LLC*, 2017 U.S. Dist. LEXIS 44446, at *11–12 (S.D.N.Y. March 25, 2017). Courts have considered other factors including "the location of spouse and family" (*Felix*, 582 B.R. at 922) as well as the difference in size and nature of residences. *See Wilson v. IHC Health Servs.*, 2013 U.S. Dist. LEXIS 49007 (D. Utah Apr. 3, 2013).

### A. Residency

Although somewhat unclear, it appears that the Debtor asserts that her physical presence in Florida establishes both the residency and intent to remain elements of domicile. By definition, time spent within a state is more pertinent to residency rather than intent to remain and domicile. *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (A person may have "more than one residence in different parts of this country or the world, but a person may have only one domicile."). For example, one can primarily live for seven years at a residence away from their domicile without changing domicile. *See Strabala v. Zhang*, 318 F.R.D. 81, 107 (N.D. Ill. 2016). Here, the Debtor submitted a timeline to establish which months she spent in Florida from February 2011 until she filed in May 2015. (Debtor's Trial Exs. 1 and 2.)

The timeline is inaccurate for three reasons. First, the Debtor concedes that she did not create the timeline. Rather, the Debtor's son prepared the timeline with her assistance based "on his recollection through social media and tracking – trying to track me." (Tr. 130:9-11.) Notably, her son did not testify at trial and the Court did not have the benefit of his first hand testimony regarding how he constructed the timeline. Second, the reason why her son prepared the timeline is, in part, because the Debtor struggles with her memory. (Tr. 121:3-7.) Third, although the Debtor assisted her son using documentary evidence such as utility bills, airplane tickets, and receipts from local vendors in the surrounding Port Richey area, the Debtor acknowledged that the method she used to calculate how many months she resided in Florida is not entirely accurate.[6] (Tr. 120:5-19.)

For instance, the Debtor heavily relied on monthly utility usage at Mimosa Drive to determine which months she resided in Florida and which months she resided in New York. (Tr. 18:21-25, 136:19-22.) She testified that based on a usage of 100 Kilowatts or higher that she was in Florida but if it was lower then she was not. (Tr. 137:24-138:8.) However, on cross examination, Endurance's counsel wholly dismantled that method of calculating when she was in Florida. (Tr. 142:9-144:10.) The Debtor conceded that her timeline states she was in Florida for January and February 2012 but her own guidelines of utility usage would dictate that no one was staying at Mimosa Drive for those months. As a result, the Debtor admitted the timeline may not be accurate. (Tr. 142:9-144:10.) Additionally, the Debtor also admitted that even where utility usage for a month is at a level consistent with someone being at Mimosa Drive, that does not mean *she* was there because numerous other people stayed at Mimosa Drive. (Tr. 139:9-24, 140:5-17.)

---

[6] The record contains no social media evidence to substantiate the Debtor's claims.

10

Furthermore, the Debtor also admits that when her timeline indicates she was in Florida a particular month, that does not mean she was there the whole month. (Tr. 128:22-129:23.) For instance, the Debtor claims she was in Florida the entire month of June 2013 but admits that she flew from Florida back to New York on June 24, 2019 and did not return to Florida that month. (Tr. 128:22-129:23.) Similarly, the timeline indicates the Debtor was in Florida for December 2012 but she testified that she may have only been there for about half of the month. (Tr. 133:15-136:15.)

Based on all of the foregoing, it is abundantly clear that the timeline is fraught with errors and is unreliable. However, the bar for residency is low and the parties do not dispute the fact that the Debtor purchased Mimosa Drive in 2011 and, although the Debtor spent considerably less time at Mimosa Drive than she asserts, the Court finds that she spent sufficient time in Florida to establish and maintain a residence in Florida from 2011 through the Petition Date. *See Venturella*, 391 F.3d at 125.

### B. Intention to Remain

On the issue of intent to remain, the Debtor provided the Court with subjective and objective evidence. The Debtor's subjective evidence is limited to scant testimony referring to Florida as her home and/or stating an intention to remain there. This self-serving testimony carries little to no weight because the testimony is overwhelmingly contradicted by the record. *See Kubin v. Miller*, 801 F. Supp. 1101, 1111 (S.D.N.Y. 1992) (holding that self-serving testimony is given little weight when it is disputed and conflicts with other evidence). Shockingly, the Debtor repeatedly contradicted herself at trial and referred to New York and/or the Hudson Property as "home." (Tr. 13:7, 13:12, 13:17, 52:8, 54:23-25, 101:5, 124:15, 130:5.) Additionally, as the Trustee and Endurance lay out in great detail, the Debtor's bankruptcy petition, schedules, and other sworn statements in court filings, are riddled with evidence that the

11

Debtor was domiciled in New York at all times prior to the bankruptcy filing. For these reasons, the Court does not find the Debtor's subjective testimony credible or persuasive.

Moving to the Debtor's objective evidence, it is similarly unpersuasive and insufficient to establish intent to remain in Florida. As an initial matter, the Debtor relies on her physical presence in Florida to also establish an intention to remain there. However, as discussed at length above, the Debtor's timeline is unreliable and the Debtor spent far less time in Florida than she claims. Additionally, the majority of the Debtor's other objective evidence is not tied to many of the objective factors used to determine intent to remain. *See New Canaan Capital Mgmt., LLC*, 2017 U.S. Dist. LEXIS 44446, *11–12. Instead, the proof largely consists of receipts from vendors/stores in the area surrounding Port Richey, Florida. At trial, the Debtor painstakingly testified regarding information readily apparent from each exhibit. For example:

> Q. And can I draw your attention to what's marked as Exhibit Sixty-eight?
>
> A. Yes.
>
> Q. And can you tell the Court what that is?
>
> A. It's a Home Depot slip and it is for -- oh, some different items that we picked up --.
>
> Q. And there appears to be a date on that form?
>
> A. There is a date for 4/28/13.
>
> Q. Okay. And were you -- and when you say the Home Depot receipt -- does -- in looking at the receipt, can you tell me where?
>
> A. It's in Port Richey, Florida.
>
> Q. And were you present when that was --?
>
> A. I was.

(Tr. 55:2-15.)

The Debtor's testimony regarding that receipt ended with that answer and continued with similar questioning regarding the next receipt. This testimony, together with similar testimony elicited throughout the bulk of the trial, provides little to no context for the receipts that objectively supports an intent to remain in Florida. Receipts from Home Depot, without a narrative supporting the Debtor's intent to remain in Florida, are equally consistent with maintaining a residence or vacation home. For example, the Debtor could have testified in great detail about each purchase, the need for it, and its role in establishing a new permanent home in Florida. Instead, the Debtor stuck to the four corners of the receipts.

The Debtor's remaining objective evidence is more relevant and consists of testimony regarding maintaining relationships with doctors, banking institutions, and insurance companies. However, the evidence is also not convincing because the Debtor maintained similar relationships in New York during the relevant time period. When considered with the fact that she voted in New York between 2012 and 2017 (Tr. 99:2-12), filed New York state tax returns in 2012, 2013, and 2014 (Tr. 105:7-19), had a New York Driver's License until 2018 (Tr. 97:11-98:4), and that the majority of her family-including her husband-live in New York (Tr. 85:6-14), the objective evidence falls far short of establishing a change of domicile by even the lesser preponderance of the evidence standard.

For all of the foregoing reasons, the Debtor did not meet her burden and the Court concludes that the Debtor did not change her domicile from New York to Florida prior to the Petition Date under either a preponderance of the evidence or a clear and convincing evidence standard.

IV. <u>Bad Faith is not a Basis to Object to the Debtor's Exemption</u>

Endurance argues that the amended exemptions should be disallowed because the Debtor has taken them in bad faith. Endurance stresses that the Debtor only amended her exemptions after the Court ruled the inherited IRA is not exempt under New York law and after she had

13

started plundering the bankruptcy estate. While the Court agrees with Endurance that the amendment appears to have been made in bad faith, in *Law v. Siegel*, the Supreme Court held that a Debtor is allowed the benefit of an exemption regardless of bad faith conduct. Endurance cites to cases that have strayed from the Supreme Court's directive but this Court is not inclined to follow this minority line of cases in the face of clear guidance from the Supreme Court. *In re DiStefano*, 2019 Bankr. LEXIS 3110, at *11–12 (Bankr. N.D.N.Y. Sept. 30, 2019).

## CONCLUSION

The Debtor agrees her domicile of origin is New York and it is her burden to establish a change of domicile through clear and convincing evidence. While the Debtor did prove she established a residence in Florida when she purchased Mimosa Drive, the Debtor's testimony and documentary evidence does not support a finding that the Debtor intended to remain in Florida. The Debtor clearly spent far less time in Florida than she asserts and, in any event, presence within a state is just part of the domicile analysis. The Debtor has more significant objective indicia of an intent to remain in New York than in Florida, in particular, she voted in New York, filed taxes in New York, had a driver's license in New York until 2018, and nearly her entire nuclear family lives in New York. Taking into consideration the strong presumption in favor of finding a New York domicile, the Debtor's objective evidence is unpersuasive since she had similar contacts in both New York and Florida. *See Lee v. Charles*, No. 12-CV-7374, 2013 U.S. Dist. LEXIS 157144, at *3 (S.D.N.Y. Nov. 1, 2013). For all of the foregoing reasons, the objection to the Debtor's amended exemption is sustained and the applicable state law pursuant to Section 522(b)(3)(A) is New York law.

It is SO ORDERED.

Dated: December 23, 2019　　　　　　　　　　　　/s/ Robert E. Littlefield, Jr.
　　　　Albany, New York　　　　　　　　　　　　Robert E. Littlefield, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge