UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:  Laurie A. Todd, | Case No. 15-11083 |
| | Chapter 7 |
| Debtor. | |

APPEARANCES:

Laurie A. Todd, *Pro Se*
*Debtor*
7838 Mimosa Drive
Port Richey, FL 34668

| | |
|---|---|
| The Dribusch Law Firm | Christian H. Dribusch, Esq. |
| *Attorneys for the Chapter 7 Trustee* | |
| 1001 Glaz Street | |
| East Greenbush, NY 12061 | |
| | |
| Nolan Heller Kauffman LLP | Francis J. Brennan, Esq. |
| *Former Attorneys for Laurie A. Todd* | |
| 80 State Street, 11th Floor | |
| Albany, NY 12207 | |
| | |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Kevin S. Brotspies, Esq. |
| *Attorneys for Endurance American Insurance Company* | |
| 88 Pine Street, 24th Floor | |
| New York, NY 10005 | |

Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

Before the Court is Laurie A. Todd's ("Debtor" or "Todd") First Amended Motion to

Disallow, Reduce or Expunge Endurance American Insurance Company's ("Endurance") claim.[1]

("Motion" or "Motion to Disallow," ECF No. 297.) The Motion was argued on May 16, 2018

and January 9, 2019 and became fully submitted on August 14, 2019. The Court has jurisdiction

pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A), (b)(2)(B), and 1334.

---

[1] The Court notes for clarity that while this Motion is captioned as her "First Amended Motion," the Debtor amended her motion twice on December 5, 2017 and June 1, 2018.

1

In a related chapter 7 bankruptcy, Debtor Stanley L. DiStefano, Jr. ("DiStefano"), filed a parallel motion to disallow Endurance's claim. (Case No. 16-10694.) The DiStefano/Todd saga concerns the same indemnification agreement ("Agreement") that imposes joint and several liability on DiStefano, Todd, and five other individuals for corporate obligations Endurance paid pursuant to its performance bonds. (Claim 4-2, Addendum to Am. Proof of Claim of Endurance, Ex. A.) The Court denied DiStefano's motion on October 30, 2019 and allowed Endurance's claim as filed; it was not appealed and is now a final order. In that decision, the Court addressed many of the same issues that Todd raises here, i.e., paying time barred claims, unreasonable attorney's fees, estimating the Court of Claims action, and delaying a decision on the Motion. *In re DiStefano*, 2019 Bankr. LEXIS 3392 (Bankr. N.D.N.Y. Oct. 30, 2019). The Court's rulings on those questions stand and are incorporated in this decision as summarized below. The three Todd issues not decided in DiStefano are whether Endurance's claim, in this case, should be (1) expunged, (2) reclassified as unsecured, or (3) reduced for failing to properly notice attorneys' fees.

**FINDINGS OF FACT**

1) Endurance sued in New York State Supreme Court, Index No. 653714/2014, ("NYSSC Suit") on December 3, 2014 to enforce the Agreement. (Endurance's Suppl. Opp'n, ECF No. 371, Brotspies Decl., Ex. A.)

2) The Debtor is one of nine defendants listed in the NYSSC Suit. (*Id.*)

3) Paragraph 13 of the complaint in the NYSSC Suit states in relevant part, "In consideration for and in order to induce Endurance, as surety, to issue bonds . . . Laurie A. Todd . . . executed a General Agreement of Indemnity in favor of Endurance . . . ." (*Id.*)

4) An answer was filed on February 23, 2015. (*Id.*, Ex. B.)

2

5) Paragraph 5 of the answer states in relevant part, "With regard to the allegations set forth in paragraph No. 13, Defendants admit that an agreement with Plaintiff was executed . . . ." (*Id.*)

6) On December 8, 2014, Judge Bransten entered an Order to Show Cause ("OSC") in the NYSSC Suit. (Endurance's Suppl. Opp'n, ECF No. 284, Brotspies Decl., Ex. A.)

7) The OSC directed the NYSSC Suit defendants to "deposit collateral with the Plaintiff in the amount of $859,474.09; if Defendants do not deposit the collateral required, this Order to Show Cause shall operate as a lien, mortgage or other encumbrance on the assets of each Defendant in the amount of $859,474.09 . . . ." (*Id.*)

8) On January 13, February 6, and March 10, 2015, the parties agreed to adjourn the OSC return date and the defendants, including Todd, consented "to continuation of the relief entered in the order dated December 8, 2014 . . . ." (Claim 4-2, Exs. B, C, and D.)

9) On April 24, 2015, a stipulation and order ("STIP") regarding the OSC was entered. (*Id.*, Ex. E.)

10) The STIP provided Todd would deposit $800,000.00 into a trust account with the Loewke Brill Consulting Group, Inc. ("Loewke") for the benefit of Endurance. If the voluntary deposit did not occur within four (4) days, Endurance could obtain the funds directly from a Todd investment account. Todd agreed to execute any necessary documents to effectuate the transfer. (*Id.*)

11) On or about May 12, 2015, Todd executed a $650,000.00 wire transfer to the Loewke trust account. (Endurance's Suppl. Opp'n, ECF No. 311, Wilson Decl., Ex. I.)

12) The Debtor filed a chapter 11 petition on May 20, 2015. (ECF No. 1.)

13) Todd declares under penalty of perjury that the information contained in the petition "is true and correct." (*Id.*)

14) On the list of creditors holding the 20 largest unsecured claims, Endurance is scheduled with a debt of $1,773,415.63. (*Id.*)

15) The obligation to Endurance is not stated to be contingent, unliquidated, or disputed. (*Id.*)

16) On Schedule F, Endurance is listed as an unsecured nonpriority claim in the amount of $1,773,415.63. (ECF No. 19.)

17) The claim is not disclosed as contingent, unliquidated, or disputed. (*Id.*)

18) On June 8, 2015, Todd filed a Motion to Enforce the Automatic Stay. (ECF No. 28.)

19) That Motion states Todd "is a member of Green Island Construction Group, LLC and Green Island Contracting, LLC . . . She is also a party to a certain indemnification agreement on the LLCs' behalf . . . in favor of Endurance American Insurance Company . . . ." (*Id.*)

20) On April 26, 2016, Todd filed an Amended Scheduled E/F. (ECF No. 117.)

21) The amendment did not change Endurance's claim or its status as not contingent, unliquidated, or disputed. (*Id.*)

22) The Debtor made the amended pleading under penalty of perjury. (ECF No. 118.)

23) On September 23, 2016, Todd participated in a settlement conference and agreed to pay $240,000.00 to resolve her liability under the Agreement. (ECF No. 148, Tr. 8.)

24) On November 10, 2017, Todd filed her disclosure statement. (ECF No. 198.)

25)  Todd stated that she had "executed that certain General Indemnity Agreement . . . in favor of Endurance . . . ." (*Id.* at 5.)

26) She further stated that, "The Debtor's debts consist primarily of Endurance's general, unsecured claim in the amount of $1,773,415.63 . . . ." (*Id.* at 6.)

27) On December 5, 2017, Todd filed a Motion to Disallow and Expunge Proof of Claim of Endurance Pursuant to 11 U.S.C. § 502(a). (ECF No. 212.)

28) The motion states in relevant part "On or about September 22, 2011, the Debtor executed that certain General Indemnity Agreement . . . in favor of Endurance . . . as an individual indemnitee with respect to the obligations of Green Island Construction Group, LLC and Green Island Contracting, LLC . . . arising from certain payment bonds issued by Endurance in favor of Green Island . . . . Endurance is included as a creditor in the Debtor's petition." ("Todd Signature Statement")

29) On December 5, 2017, Todd filed an Amended Motion to Disallow that contains the Todd Signature Statement. (ECF No. 215.)

30) On March 23, 2018, Todd filed a submission in further support of the Amended Motion to Disallow that contains the Todd Signature Statement. (ECF No. 254.)

31) On March 23, 2018, the Debtor filed a first amended disclosure statement that contains the Todd Signature Statement. (ECF No. 255.)

32) On May 1, 2018, the Debtor filed supplemental opposition that makes no mention of possible infirmities with the execution of the Agreement. (ECF No. 285.)

33) The Debtor's Motion to Disallow was first heard on May 16, 2018.

34) During oral argument, the Court queried Debtor's counsel, "[A]re we concerned with the classification of the claim, the dollar amount of the claim, or both?" (ECF No. 299, Tr. 5:20-22.)

35) Debtor counsel answered, "I think we are concerned with both." (*Id.*, Tr. 5:23-24.)

36) The Court also asked, "[D]o we all agree that the claim is north of a dollar?" (*Id.*, Tr. 6:13-14.)

37) Debtor counsel answered, "Yes." (*Id.*, Tr. 6:15.)

38) The Court additionally stated, "But Mr. Brennan agrees it's [the claim] not going to be disallowed. It may be reduced or may be restructured, reclassified, but it's not going to be expunged." (*Id.*, Tr. 8:9-11.)

5

39) Debtor counsel replied, "There is some amount that's owed . . . ." (*Id.*, Tr. 8:12.)

40) On June 1, 2018, the Debtor filed the First Amended Motion to Disallow that contains the Todd Signature Statement. (ECF No. 297.)

41) In a related decision involving the Debtor, the Court found that "the Debtor . . . signed a written General Agreement of Indemnity to hold Endurance harmless." *In re Todd*, 585 B.R. 297, 300 (Bankr. N.D.N.Y. 2018).

42) The Debtor did not appeal that finding.

**ARGUMENTS**

Todd's basis for expunging Endurance's claim is that she allegedly never signed the Agreement. She states that she did not realize that her signature is a forgery until November 2017. If the Court rejects the forgery argument, the Debtor asserts that Endurance's claim should be reclassified as a general unsecured claim because the security interest provided by the state court is void and, in any event, she satisfied the secured portion. Finally, the Debtor states that Endurance's attorneys' fees were not noticed pursuant to Federal Rule of Bankruptcy Procedure 2016 and should be disallowed.[4]

Endurance responds that it is too late to escape her liability on the Agreement for multiple reasons, including the numerous judicial admissions in her pleadings, partial ratification of the Agreement, and the prejudice to Endurance and the bankruptcy process based on the more than 6 year time lag from the execution of the Agreement in September 2011 to the Debtor's epiphany in November 2017. Endurance also points out that the Court already made a specific finding that the Debtor signed the Agreement. Endurance further states that, based on the Debtor's consent to the OSC in state court, she should be estopped from collaterally attacking the process that established Endurance's partial security interest. Finally, Endurance posits that Rule

---

[4] Although the Debtor did not appear at the final hearing on her Motion on August 14, 2019, the Court will address the arguments advanced in this protracted litigation due to its unique circumstances and her *pro se* status as of May 6, 2019.

6

2016 is inapplicable to its attorneys' fees as they are to be paid as part of the unsecured portion of its claim and not as an administrative claim.

## DISCUSSION

I. ISSUES DECIDED IN DISTEFANO'S CASE

Four of Todd's arguments mirror those raised in DiStefano's parallel motion to disallow. As explained in greater detail in the October 30, 2019 Decision and Order:

1) Paying Time Barred Claims - To have any vitality, the Debtor would need to show bad faith, not mere negligence.  DiStefano abandoned any attempt to meet that standard when he chose not to proceed with discovery; Todd is tied to that effort.   The Debtor's position fails for the same reasons as in the DiStefano decision.

2) Attorneys' Fees - Endurance's position is correct.  The attorneys' fees are analyzed pursuant to 11 U.S.C. § 502 and not Section 506.  The *Ogle v. Fidelity & Deposit Co.*, 586 F.3d 143, 145 (2d Cir. 2009) decision provides Second Circuit validation.

3) Estimation of the Court of Claims Action - As shown in DiStefano's case, there is no statutory basis to estimate the claim.  In any event, the case has been decided.  Should Endurance obtain funds from the Court of Claims case, it will be credited on its debt.

4) Postponing this Motion Pending a Decision in New York Supreme Court - For the reasons stated in the DiStefano ruling, the Court respectfully declines.

II. THE DEBTOR SIGNED THE AGREEMENT

In an affidavit filed on October 10, 2018 (ECF No. 363), Todd attests that in late November 2017 she realized she had not signed the Agreement.  This argument fails on the law and the facts.  First, law of the case defeats the Debtor's argument.  "The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

7

manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008). In *In re Todd*, 585 B.R. 297, 300 (Bankr. N.D.N.Y. 2018), decided approximately 4 months after Todd's supposed awakening, the Court found that the Debtor signed the agreement, that factual finding was not appealed, and, in any event, the District Court affirmed. *Todd v. Endurance*, 596 B.R. 79 (N.D.N.Y. 2019). For these reasons, together with Debtor's counsel's statement in May 2018 that Endurance's claim is more than a $1.00, the Debtor has not provided compelling reasons for the Court to revisit its prior finding that she signed the Agreement.

Second, even if law of the case did not prevent the Debtor from challenging her liability, the Debtor's position is simply unbelievable and contrary to her judicial admissions. If she did not sign the Agreement, Endurance would have no claim against her. However, as shown in the findings of facts above, and as Endurance argues, the Debtor repeatedly admitted in state and bankruptcy court that she owes a debt to Endurance, including in, the Answer filed in the NYSSC action, the chapter 11 list of the 20 largest unsecured creditors, her initial Schedule F, her motion to enforce the stay, and her Disclosure Statement. The Debtor has also engaged in a course of conduct consistent with her admissions; such as paying $650,000 to the Loewke trust account and participating in mediation sessions which, though ultimately not consummated, nevertheless resulted in her pledge to pay $240,000 to resolve her liability.

The most troubling aspect of this argument is that the Debtor's admissions and course of conduct continued *after* she allegedly discovered in November 2017 that her signature is a forgery. Inexplicably, the Debtor included the Todd Signature Statement in five different pleadings stretching from December 2017 to June 2018. Making matters even more egregious, the Debtor filed all three versions of her Motion to Disallow after November 2017 and none of the Motions assert she did not sign the Agreement. The Debtor first raised forgery in her sixth and final submission in support of her Motion on October 10, 2018 (ECF No. 363) and never further amended her Motion or schedules to reflect that she disputes Endurance's entire claim.

8

*See In re Leonard*, 151 B.R. 639, 643 (Bankr. N.D.N.Y. 1992). It is inconceivable that the Debtor would allow these filings at a time when she knew her signature is a forgery. For these reasons, the only remaining issue before the Court is the amount of the claim and not the validity of the claim.

### III.  ENDURANCE'S SECURED CLAIM

The Debtor also argues that Endurance's secured claim should be reclassified as unsecured for two reasons. First, the state court exceeded its authority in the OSC by granting injunctive relief. Second, the Debtor satisfied the OSC's lien by paying the required money to Endurance. Regarding the lack of authority theory, the Debtor submitted pleadings more akin to an appellate brief than a motion to disallow a claim. If the Debtor disagreed with the state court result, the Debtor should have appealed in state court. However, that would have been awkward because Todd consented to the OSC, including three extensions and all its provisions regarding the creative liens and security interests. In any event, the bankruptcy court has no jurisdiction to reverse the state trial court. Admittedly, the December 8, 2014 OSC is very creative and unusual but the Debtor gives no authority for this Court to overturn it.

Todd further argues that the claim is unsecured because she satisfied the OSC's lien by paying $650,000 to the Loewke Trust and $239,000 to NBT Bank for unpaid benefits and pension contributions asserted against Endurance's bonds. According to the STIP's terms, Todd's payment to Loewke was short ($650,000 and not $800,000) and untimely (paid May 12, 2015 and not April 28, 2015). However, Endurance concedes that Todd transferred $650,000 to the Loewke Trust but does not address why Todd should not be credited that amount towards its $859,474.09 secured claim. Admittedly, the $650,000 payment was applied to Endurance's total claim and is reflected in the net amount of $1,769,317.[5] However, since Todd partially

---

[5] Endurance's bifurcated claim totals $1,769,317.09. The filed proof of claim is for $1,769,317.00. Despite the discrepancy, the Court will utilize the lower amount.

9

performed pursuant to the OSC and the STIP, the secured portion of Endurance's claim is reduced by $650,000 to $209,474.09. As a practical matter, this may be a pyrrhic victory for the Debtor as she remains jointly and severally liable for Endurance's total claim. The Court declines to credit the alleged $239,000 NBT payment because no proof of it was provided in conjunction with this Motion and it was not contemplated by the OSC and STIP.

IV. ATTORNEYS' FEES

The Debtor's final argument is that Endurance's claim cannot include attorneys' fees that have not been approved after a motion pursuant to Federal Rule of Bankruptcy Procedure 2016. Fed. R. Bankr. Proc. 2016. Rule 2016 provides the procedure for entities seeking compensation for services from the bankruptcy estate and is wholly inapplicable to creditors including attorneys' fees in their proofs of claims. The Debtor does not provide any authority that analyzes allowing an unsecured claim including attorneys' fees other than pursuant to Section 502, which does not require a creditor to make a motion to include attorneys' fees in a claim. As Endurance indicates, this is not an instance where its fees will prime anyone as they are part of the unsecured claim and will share *pro rata* in Todd's estate with other claims in that class. The attorneys' fees are allowed.

## CONCLUSION

For all of the foregoing reasons, Endurance's claim for $1,769,317.00 is allowed in full but the secured portion of the claim as regards Todd is reduced to $209,474.09, with the balance reclassified as unsecured.

It is SO ORDERED.

Dated: December 23, 2019           /s/ Robert E. Littlefield, Jr.
       Albany, New York            Robert E. Littlefield, Jr.
                                   United States Bankruptcy Judge

10